ARNOLD L. BEIZER *v.* DEPARTMENT OF LABOR
(AC 18242)
(AC 18898)

O'Connell, C. J., and Lavery and Hennessy, Js.

Argued October 18, 1999—officially released January 11, 2000

*Richard F. Wareing*, with whom, on the brief, was *Anthony J. Natale*, for the appellant-appellee (plaintiff).

*Thadd A. Gnocchi*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellee (defendant).

*Jon L. Schoenhorn*, with whom, on the brief, was *Jeanne M. Zulick*, for the appellee-appellant (intervening defendant).

*Opinion*

LAVERY, J. The plaintiff, Arnold L. Beizer, doing business as the Law Offices of Arnold L. Beizer, appeals from the trial court's judgment dismissing his administrative appeal from a decision rendered by the commissioner of the defendant department of labor (department). The intervening defendant, Albert P. Lenge, cross appeals from the trial court's judgment dismissing his counterclaim for lack of subject matter jurisdiction. We affirm the judgments of the trial court.

The following procedural history and facts are relevant to our resolution of both appeals. On or about November 17, 1994, the department received a complaint from Lenge alleging that the plaintiff had discriminated against him in violation of General Statutes § 31-226a.[1] The complaint was assigned to a hearing officer, who held a hearing on March 25, May 11 and July 7, 1995. The hearing officer issued a proposed decision on January 4, 1996. The plaintiff filed exceptions to the hearing officer's proposed decision and requested oral

---

[1] General Statutes § 31-226a provides: "(a) No employer shall discharge, discipline, penalize or in any manner discriminate against any employee because the employee has filed a claim or instituted or caused to be instituted any proceeding under this chapter, or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

"(b) Any employee who believes that he has been discharged, disciplined, penalized or otherwise discriminated against by any person in violation of this section may file a complaint with the Labor Commissioner alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the commissioner shall hold a hearing. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee all appropriate relief including rehiring or reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discharged, disciplined, penalized or discriminated against. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees and costs. Any party aggrieved by the decision of the commissioner may appeal the decision to the Superior Court in accordance with the provisions of chapter 54."

argument before the commissioner. The plaintiff and Lenge both filed additional briefs and were heard in oral argument before the commissioner on November 26, 1996. The commissioner issued a final decision dated February 24, 1997, in which the following facts relevant to these appeals were found.

On July 13, 1994, Lenge entered into a written employment contract with the plaintiff to become an associate in the plaintiff's law firm. The plaintiff established Lenge's priorities and directed his caseload. The plaintiff set all of the office policy and attendance standards and made all personnel decisions. Lenge had no authority to hire or fire personnel. Between July and the end of October, 1994, Lenge had made several mistakes, which the plaintiff brought to his attention.

On October 26, 1994, the plaintiff entered Lenge's office with a client and discussed the cases of other clients with Lenge. The plaintiff left Lenge's office, leaving the client sitting in a chair. Lenge followed the plaintiff and told him he could not work with a client sitting in his office. An argument ensued and Lenge left the office for two hours to take a walk. When he returned, Lenge found that his diplomas and art work had been removed from the walls, and the office manager informed him that the plaintiff wanted him to go home. Lenge agreed, saying he would take a personal leave day. Lenge returned to work on October 27, 1994, and had a discussion with the plaintiff at the end of the day; there appeared to be no hard feelings between the two. Several days later, the plaintiff asked Lenge in a loud voice why he, not a paralegal, was working on the dormancy list.

On September 6, 1994, the plaintiff had employed Heidi Gulino as a secretary to perform the majority of Lenge's secretarial work. During the term of her employment, the plaintiff told Lenge that he was going

to fire Gulino; Lenge responded that Gulino was doing good work for him. The plaintiff refrained temporarily from firing Gulino but eventually terminated Gulino's employment on October 21, 1994. The office manager told Lenge that Gulino was fired because she made an excessive number of telephone calls. Lenge agreed that Gulino made telephone calls and acknowledged that others thought her use of the telephone was excessive, but he himself did not think her use of the telephone was excessive.

Following her termination, Gulino asked Lenge if he would write her a letter of recommendation. Lenge agreed and wrote Gulino a letter "to whom it may concern" dated October 28, 1994, on his personal stationery. The letter of recommendation stated in part: "Heidi Gulino was employed in 1994 as my personal secretary at the Law Offices of Arnold L. Beizer . . . . Ms. Gulino . . . created the kind of 'first impression' that we wanted for prospective clients. . . . She was punctual and was always the first employee to arrive at the job each day." At the hearing before the hearing officer on Lenge's discrimination claim, Lenge testified that the pronoun *we* referred to him and Donald O'Brien, an attorney also employed by the plaintiff.

Gulino filed a claim for unemployment compensation benefits. Prior to the hearing on her claim, Gulino asked Lenge if she could use the letter of recommendation at the hearing. Lenge gave her permission to use the letter at the hearing. Subsequently, Lenge overheard the office manager and another of the plaintiff's employees discussing the fact that the plaintiff intended to oppose Gulino's claim for unemployment benefits.

At the November 4, 1994 hearing on Gulino's unemployment claim, the office manager represented the plaintiff and claimed that Gulino was terminated for just cause due to the fact that she was not punctual

and that her work was not good. Gulino presented Lenge's letter of recommendation.

The plaintiff was on a business trip on November 4, 1994, and learned of Lenge's letter of recommendation on Sunday, November 6, 1994. Lenge worked on November 7, 1994, without incident. The plaintiff gave his office manager a note concerning statements in Lenge's recommendation with which the plaintiff disagreed. On November 8, 1994, the office manager, at the plaintiff's direction, asked Lenge to write to the department explaining that his letter of recommendation for Gulino was misleading. According to the office manager, an item of disagreement concerned the time of Gulino's arrival in the office.[2] Lenge refused to write the requested letter.

On November 8, 1994, Lenge also received a letter from the plaintiff dated November 7, 1994, which was a written reprimand outlining a series of actions taken by Lenge with which the plaintiff was displeased. The reprimand referred to the events of October 26, 1994, and the letter of recommendation for Gulino. The letter informed Lenge that he would not be paid for the day he was sent home for insubordination, i.e., October 26, 1994.

Lenge was upset about the written reprimand and spoke to the plaintiff about it. During the conversation, Lenge told the plaintiff he could not take any more, that he was going to resign and that he was giving the four weeks' notice mandated by the employment contract. The plaintiff said, "Go ahead and resign." Lenge left the plaintiff's office to speak with O'Brien. After he calmed down, Lenge changed his mind about resigning. Later in the day, Lenge received a memorandum from the plaintiff accepting his resignation and

---

[2] Apparently, Gulino was the first to arrive because she was to start work one-half hour earlier than the other secretaries.

requesting that it be put in writing. In response to the plaintiff's memorandum, Lenge had a memorandum rescinding his resignation delivered to the plaintiff. Lenge worked on November 8 and 9, 1994, without further incident. On November 10, 1994, the plaintiff placed an advertisement in the Hartford Courant seeking an attorney with litigation and personal injury experience.

Although Lenge had received full pay for the two pay periods immediately following October 26, 1994, one day's pay was withheld from his November 10, 1994 paycheck for the time he was absent from work on October 26, 1994. Lenge was disturbed that the plaintiff had withheld one day's pay. On November 11, 1994, Lenge left a message on the answering machine at the law offices saying that he was sick and was not coming into work. In fact, Lenge was not physically ill but contributed his time to a political campaign that day. Lenge later explained that on November 11, 1994, he was so distraught over the treatment he had received from the plaintiff that he needed to take a day off to sort out his feelings and recover his composure.

On Sunday, November 13, 1994, Mark Melly, another lawyer in the plaintiff's employ, went to Lenge's home to deliver Lenge's personal effects and a letter from the plaintiff. The letter, dated November 11, 1994, stated, among other things, "After repeated wilful misconduct, insubordination, reprimands and disagreements, your intentional failure to report to work today is one further example of misconduct. . . . I accepted your resignation on Monday, November 7th. . . . Your abuse of authority and discretion with regard to an improper and unauthorized letter of reference for a terminated employee as I pointed out to you undermined the workings of our office and such conduct cannot be tolerated. I consider these actions above referenced among others a material breach of contract." Lenge considered him-

self fired. He did not return to the plaintiff's law firm. Lenge was not able to secure new employment until March 6, 1995.

The commissioner found that Lenge had proved by a preponderance of the evidence that the plaintiff had discharged Lenge for assisting Gulino's claim for unemployment compensation, giving rise to a rebuttable presumption of discrimination. The commissioner also found that the plaintiff had rebutted the presumption of intentional discrimination by producing evidence that Lenge had not been discharged but had quit. The commissioner found, however, that the plaintiff's evidence was not credible.[3] He concluded that the plaintiff had discharged Lenge from his employ in violation of § 31-226a because Lenge had assisted Gulino in filing for unemployment compensation benefits.

The commissioner awarded Lenge $16,923.04 in back pay, a portion of annualized health insurance payments of $913.12, costs and reasonable attorney's fees. The plaintiff appealed to the Superior Court from the commissioner's decision pursuant to General Statutes § 4-183[4] and § 31-226 (b). Lenge moved to intervene as a defendant in the appeal and filed a counterclaim against the plaintiff. The court affirmed the commissioner's decision and dismissed the plaintiff's appeal and Lenge's counterclaim. These appeals followed.

I

We turn first to the plaintiff's appeal. The plaintiff claims that the trial court improperly dismissed his

---

[3] In addition to other issues of credibility contained in this opinion, the commissioner found that one of the plaintiff's witnesses was not credible with respect to the period of time she worked for the plaintiff.

[4] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

administrative appeal because the commissioner improperly determined that the plaintiff had discriminated against Lenge by dismissing him in violation of § 31-226a. Specifically, the plaintiff claims that the commissioner improperly (1) found that Lenge's use of the pronoun *we* in a letter of recommendation referred to Lenge and an unnamed person, (2) ignored his own finding that Lenge resigned when he later concluded that Lenge was wrongfully terminated and (3) awarded Lenge money damages for health benefits. We are not persuaded.

Appeals to the trial court from administrative decisions are governed by the Uniform Administrative Procedure Act (act), General Statutes § 4-166 et seq. See *Rivera* v. *Liquor Control Commission*, 53 Conn. App. 165, 169, 728 A.2d 1153 (1999). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decision are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. . . ." General Statutes § 4-183 (j).

In retaliatory discharge cases, the commissioner may look to federal law for the allocation of burdens of proof. See *Ford* v. *Blue Cross & Blue Shield of Connecti-*

*cut, Inc.*, 216 Conn. 40, 53, 578 A.2d 1054 (1990). "In *McDonnell Douglas Corporation* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the United States Supreme Court set forth the basic allocation of burdens and order of presentation of proof in cases involving claims of employment discrimination. The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. Id., 802. In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. *Texas Department of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corporation* v. *Green*, supra [802]. 'If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.' *Texas Department of Community Affairs* v. *Burdine*, supra, 255. The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination 'either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' Id., 256; see *McDonnell Douglas Corporation* v. *Green*, supra, 804–805." *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 53–54.

## A

The plaintiff's first two claims concern the sufficiency of the evidence. Our Supreme Court has "interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court nor of this

court to retry the case or to substitute its judgment for that of the administrative agency. . . . *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 57, 591 A.2d 1231 (1991); see *DiBlasi* v. *Zoning Board of Appeals*, 224 Conn. 823, 829–30, 624 A.2d 372 (1993). An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 57. Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 601, 590 A.2d 447 (1991); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 57. This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 640, 583 A.2d 906 (1990)." (Internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 36, 716 A.2d 78 (1998).

1

The plaintiff's first sufficiency claim is that the hearing officer improperly found that Lenge's use of the pronoun *we* in the letter of recommendation he wrote for Gulino referred to him and an unnamed person. We disagree.

The plaintiff asked the trial court and now asks this court to reinterpret the letter of recommendation Lenge wrote on behalf of Gulino, specifically finding that the pronoun *we* refers to Beizer and Lenge. The letter was written on Lenge's personal stationery, and Lenge testified that he was referring to O'Brien and himself when

he used the pronoun. The plaintiff argues that Lenge's use of the pronoun *we* misrepresents the plaintiff's opinion of Gulino's performance, and, therefore, the letter of recommendation is not protected activity under § 31-226a.

The commissioner based his findings on the letter of recommendation, the testimony of the parties and the credibility of the witnesses. We conclude, therefore, that the trial court properly determined that there was substantial evidence in the record to support the commissioner's conclusion.

2

The plaintiff's second sufficiency claim is that the commissioner ignored his own finding that Lenge resigned when he later concluded that Lenge was wrongfully terminated. Again, we do not agree.

The plaintiff argues that because the commissioner made findings of fact that Lenge, "after receiving the letter of reprimand . . . went into the [plaintiff's] office and said he cannot take this any more and said he was going to resign, giving the [plaintiff] the four weeks notice mandated by the employment contract. The [plaintiff] said go ahead and resign." The commissioner also found that "after he calmed down, [Lenge] changed his mind about resigning. Later in the day on November 8, 1994, [Lenge] received another memorandum from the [plaintiff] accepting [Lenge's] resignation and requesting it be put in writing. The employment contract provided . . . that '[e]ither party may terminate this contract upon four (4) weeks' advance written notice. After receiving the [plaintiff's second memorandum, Lenge] notified the [plaintiff] that he had changed his mind about resigning. He had a memorandum hand-delivered by a secretary rescinding his resignation."

The trial court, after reviewing the commissioner's decision, concluded that the hearing officer's finding

that Lenge had been terminated for supporting Gulino's unemployment compensation claim was supported by substantial evidence for the following reasons. Lenge revoked his oral resignation. The plaintiff clearly intended to fire Lenge when he had Melly deliver the November 11, 1994 letter and Lenge's personal effects to his home. The trial court agreed that Lenge's writing a letter of recommendation for Gulino was protected activity within § 31-226a and that the plaintiff's reason for firing Lenge was discriminatory. On November 8, 1994, the plaintiff asked Lenge to write another letter to the department to clarify his letter of recommendation on Gulino's behalf. Lenge refused and received a letter of reprimand from the plaintiff. On November 10, 1994, the plaintiff withheld one day's pay for the October 26, 1994 incident after two uneventful pay periods. The plaintiff's November 11, 1994 letter specifically references Lenge's protected activity as improper conduct and a material breach of contract, thereby justifying his termination.[5] The commissioner rejected the plaintiff's argument that Lenge was fired for not reporting to work on November 11, 1994, as not credible, because on November 10, 1994, the plaintiff had placed an advertisement seeking an attorney to replace Lenge.

The trial court concluded that it was reasonable and logical for the commissioner to find that Lenge's protected activity was the reason for his termination. The trial court noted that even if Lenge's failure to report to work on November 11, 1994, justified the plaintiff's firing him, Lenge may still prevail under a mixed-motives analysis. See *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 246, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). The trial court properly reviewed the commissioner's findings of fact.

---

[5] The plaintiff's November 11, 1994 letter states in part: "Your abuse of authority and discretion with regard to an improper and unauthorized letter of reference for a terminated employee as I pointed out to you undermined the workings of our office and such conduct cannot be tolerated."

B

The plaintiff's final claim is that the commissioner improperly awarded Lenge damages for health benefits. We agree with the trial court.

The following additional facts are necessary for our review of this claim. By way of addendum, the employment contract provided that the plaintiff agreed to pay Lenge the difference in cost between the health insurance he had under his prior employer's health plan and the insurance provided by the plaintiff.

"Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 219 Conn. 57–58. Where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act*, 209 Conn. 381, 385–86, 551 A.2d 724 (1988).

Section 31-226a (b) authorizes the commissioner to award health insurance benefits that are provided under the employment contract. The trial court, therefore, properly concluded that the commissioner appropriately awarded Lenge pro rata health benefits to which he was entitled.

For all of the foregoing reasons, the trial court properly dismissed the plaintiff's appeal.

## II

Lenge cross appeals from the judgment of the trial court dismissing his counterclaim against the plaintiff. On appeal, Lenge claims that the trial court improperly (1) concluded that it did not have subject matter jurisdiction to hear the counterclaim, (2) denied his motion for summary judgment and (3) sustained the plaintiff's objection to his offer of judgment. We affirm the judgment of the trial court.

The following additional facts are necessary for our resolution of Lenge's cross appeal. After the trial court granted his motion to intervene as a party defendant, Lenge filed a counterclaim against the plaintiff alleging that the plaintiff failed to pay him the damages awarded by the commissioner. Subsequent to the trial court's dismissal of the plaintiff's appeal, Lenge filed a motion for summary judgment claiming, on the basis of the dismissal, that there were no genuine issues of material fact and that he was entitled to judgment on his counterclaim. The plaintiff objected to the motion for summary judgment arguing that, pursuant to Practice Book § 14-7, summary judgment is not permitted in an administrative appeal of this type. The trial court determined that it did not have subject matter jurisdiction over Lenge's counterclaim and dismissed it. We affirm the trial court's judgment, but on a different basis.[6]

Resolution of Lenge's appeal requires us to differentiate between the trial court's jurisdiction and its statutory authority. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement

---

[6] "We can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

(Second), Judgments § 11. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. *Craig* v. *Bronson*, 202 Conn. 93, 101, 520 A.2d 155 (1987). It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 420–21 n.3, 426 A.2d 1324 (1980).

"Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952)." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

Agency appeals to the Superior Court exist under statutory authority only. See *Allied Plywood, Inc.* v. *Planning & Zoning Commission*, 2 Conn. App. 506, 509, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). Section 31-226a permits appeals to the Superior Court from decisions of the department's hearing officers pursuant to the act. Section 4-183 (j) authorizes the Superior Court to sit as a court of appeals to review agency decisions with respect to their constitutionality and adherence to statutes and lawful procedure, and to determine whether they are affected by errors of law or are clearly erroneous on the basis of the evidence in the whole record or whether there was some abuse of discretion. Nothing in § 4-183 (j) gives the trial court

authority to rule on a motion for summary judgment or to grant Lenge the relief he sought. Although the trial court, sitting as a court of general jurisdiction, may have the subject matter jurisdiction and authority to grant Lenge the relief he seeks, it does not have that authority when it sits as an appellate court pursuant to the act. We hold, therefore, that the dismissal of Lenge's counterclaim was proper.[7]

The judgments are affirmed.

In this opinion the other judges concurred.

[7] Because we hold that the trial court properly dismissed Lenge's counter-claim, we need not address his other claims.