### E. DON SMITH ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF GREENWICH
### (10431)

DALY, NORCOTT and LAVERY, Js.

Argued May 1—decision released September 8, 1992

*E. Don Smith,* pro se, and *Eileen Smith,* pro se, the appellants (plaintiffs).

*James W. Macauley,* for the appellee (named defendant).

*William E. Hegarty,* for the appellees (defendant the Historical Society of the Town of Greenwich, Inc., et al.).

LAVERY, J. The plaintiffs, E. Don Smith and Eileen Smith, appeal from the trial court's decision affirming the denial of their subdivision application by the zoning board of appeals of the town of Greenwich.

The dispositive issue in this appeal is whether the trial court correctly upheld the denial of the plaintiffs' subdivision application. The trial court found that the application conformed to all the stated subdivision regulations, but that it "did not meet the purposes of the subdivision regulations . . . . It does not conform to the town of Greenwich plan of development in that it does not meet the basic objectives of preservation of historic and architectural resources. Furthermore, it does not preserve the natural features of the landscape: namely the historic streetscape." We reverse the judgment of the trial court.

The relevant facts are as follows. The plaintiffs reside at and are owners of property located at 35 Strickland Road in Greenwich. The property is located in an R-7 zone and contains 33,032 square feet. The minimum lot size for this zone is 7500 square feet. The property

is also located in an historic district. In January, 1987, the plaintiffs submitted a subdivision application to the planning and zoning commission of the town of Greenwich (commission), seeking to subdivide the property into three lots. In April, 1987, the commission conducted a hearing on the plaintiffs' application and advised them to proceed to a final subdivision plan, subject to the resolution of a number of specified issues prior to the final application submission.[1]

The plaintiffs subsequently proposed a final subdivision plan. On November 22, 1988, the commission denied the subdivision application by the following resolution: "WHEREAS, the Town of Greenwich Plan of Development, 1984 states as a basic development objective the preservation of historic and architectural resources; and

---

[1] In particular, the commission requested the following:

"1. That Lot 1 be shifted to the southerly property boundary of the tract. Concurrently that portion of the park and playground area displaced by the relocation of Lot 1 shall be moved to the northerly property line of Lot 1.

"2. The commission observed that the area reserved for park and playground being 14.67 percent, conventionally required to be 15 percent, is acceptable as it is calculated from a gross area which includes a free-throw lot for which park and playground is not required.

"3. The utility easement shall be located so as to minimize impacts to significant trees.

"4. The applicant shall meet with the Historic District Commission in order to determine an appropriate house location for Lot 1. The preservation of significant trees shall be taken into consideration in determining house location, as well as conformity as nearby as possible to the existing setback/streetscape of house locations to the south.

"5. The applicant shall meet with the Conservation Coordinator in order to develop tree preservation details as required by house and utility easement siting.

"6. That the Declaration of Restrictions for the reserved areas be submitted to the Law Department in accordance with the model document.

"7. That provisions of access easements be indicated on the record sheet.

"8. That the existing southerly curbcut be the sole accessway to Lot 1.

"9. That the appropriate utility easements to the northerly property (Ward) be indicated on the record sheet.

"10. That a sight line improvement plan indicating any modifications to existing features of walls and trees, etc., be submitted for review and

"WHEREAS, the subject lot is contained within the duly established Mill Pond Historic District; and

"WHEREAS, the Commission recognizes that the existing streetscape, which is defined by the open space of the subject tract in relation to adjoining historical properties, structures, and open spaces is a significant element of the historic district in terms of visual appearance as well as historic use and occupancy of the land; and

"WHEREAS the subdivision would permit construction of a house in the previously defined, significant open space, thereby disrupting an essential characteristic of the historic district; and

"WHEREAS a stated purpose of the Subdivision Regulations of the Town is to 'Further the orderly development of the Town in accordance with the Town Plan of Development'; and

"WHEREAS, the Commission finds that there are other zoning options for development of the property which would provide for the same or greater number

approval by the Department of Public Works. Historic District Commission should also comment on alternate plans to achieve acceptable sight distance, if significant trees or the stone wall are adversely effected.

"11. The applicant must obtain a sewer permit prior to the issuance of a building permit.

"12. The applicant shall obtain confirmation from the Engineering Division that there will be no adverse impacts to nearby properties and water bodies due to site drainage.

"13. The following note is to appear on the construction sheet: 'Prior to any excavation(s) the applicant(s), in accordance with Public Act 77-350, shall be required to contact Call Before You Dig, Inc., at 1-800-922-4455 for markout of underground utilities.'

"14. Submit a driveway plan in accordance with Sec. 6-131 [of the Greenwich Municipal Code]. In the event significant open space or trees are impacted, it is recommended that the applicant apply for a variance in order to use as much of the existing driveway as possible while providing safe sight distance and maneuverability. The plan should be reviewed with Planning Staff, HDC and D.P.W. prior to submitting final plan."

of dwelling units while preserving the site's open space and natural features which are significant components of the historic streetscape;

"THEREFORE, BE IT RESOLVED that final Subdivision #1066 of E. Don Smith and Eileen Smith owners of property located on Strickland Road consisting of a record sheet prepared by J. A. Kirby Company dated March 17, 1988, revised September 26, 1988, is hereby denied."

The plaintiffs appealed the decision of the commission to the defendant zoning board of appeals of the town of Greenwich (board). The board then conducted a de novo public hearing on the plaintiffs' final subdivision plan pursuant to § 103 of the Greenwich Municipal Code. The proposed subdivision called for three lots, the first containing the plaintiffs' residence, the second containing the plaintiffs' barn, and the third the presently unimproved area in front of the plaintiffs' residence. At the public hearing, the chairman of the historic district commission urged the board of appeals to reject the subdivision, stating that the historic district commission would not allow any structure to be built on the third lot. After a lengthy hearing, the board denied the plaintiffs' appeal on the following grounds: "The proposed subdivision did not meet the purposes of the Subdivision Regulations as provided in Section 6-260, thereof. It does not conform to the Town of Greenwich Plan of Development in that it does not meet the basic objectives of preservation of historic and architectural resources. Furthermore, it does not preserve the natural features of the landscape; namely, the historic streetscape.

"Applicants' plan proposed in an Historic District was opposed in testimony and in writing by the Historic District Commission which among other things, oversees erection and alteration of buildings in said district. Such

plan was also opposed by residents in the District. The Board finds that the integrity of the Historic District would be violated and the appearance and historic character of the Historic District would be impaired by this plan. The residents who voted to form an Historic District were given assurances of preservation of their historic neighborhood even though they knew certain freedoms of future development would be regulated and restricted.

"The applicants were aware of the property's location in the Historic District since that fact is stated in their deed and they formerly resided in this District at another address. The Board concluded that the applicants' development rights were not deprived because other alternatives for development are available.

"The property is located in the Coastal Zone of the Town. Therefore, it is subject to the requirements of the *Coastal Area Management Act.* The Board finds that the proposed subdivision plan would have an adverse impact on coastal resources because of the alteration of *natural features of vistas.*" (Emphasis in original.)

The plaintiffs appealed the board's decision to the Superior Court, pursuant to General Statutes § 8-8 (2) (b). The trial court upheld the board's decision, ruling against the plaintiffs' claims that the proposal met the requirements of the subdivision regulations as written and that the town plan of development is not a regulation. The trial court further found, however, that the board's conclusion, based on the Coastal Area Management Act, was not based on substantial evidence and was not a sufficient reason to deny the subdivision application.

The court found in relevant part as follows. "Section 6-260 of the Greenwich Municipal Code provides that one of the purposes of the subdivision regulations is

to 'further the orderly development of the town in accordance with the town plan of development.' The town plan of development has as one of its 'Basic Objectives' the preservation of historic resources. The town plan of development also provides that 'Greenwich has a rich . . . historical heritage that should be protected for the benefit and enlightenment of future generations,' and that 'conserving the Town's . . . historical resources is a notably effective land use tool for preserving the essential character and spirit of the community.' Other references to the importance of historic factors appear in the town plan of development. An evaluation of historical factors is specifically mentioned in the Greenwich Subdivision Regulations, § 6-266 (a) 19, governing subdivisions in the coastal zone.

"It is the opinion of the court that the plaintiffs' position is without merit. Not only do the subdivision regulations mention historic factors, but they state as a purpose the development of the town in accordance with the town plan of development, which has preservation of historic resources as a basic objective. Further, given the established public policy favoring historic preservation, see General Statutes § 7-147a et seq. and Greenwich Municipal Code § 6-307, and the plaintiffs' deed restriction, it is found that the board did apply standards contained in the regulations to the subdivision, and plaintiffs had notice that historic factors would be considered.

"The board's finding that the proposal would impair the historic streetscape is supported by the record. The Smiths' side of Strickland Road is characterized by homes on lots with sweeping front lawns. The plaintiffs plan to convert their front lawn into a building lot and construct thereon a house with a thirty feet by forty feet footprint, and setbacks of twenty-five feet from the front properly line, twenty feet from the south property line, and fifteen feet from a line of trees. These

exhibits show that construction of a house on the front lawn would drastically alter the streetscape, and support the board's conclusion in that regard.

"The board also cited the opposition of the historic district commission, which, among other things, oversees erection and alteration of buildings in the historic district."

The trial court ultimately concluded that the board's consideration of and decision based on historic factors was proper and that the evidence on the record was sufficient to support the board's decision that the proposed subdivision would impair the appearance of the historic streetscape. The plaintiffs appealed from the trial court's dismissal of their appeal after we granted certification.

We disagree with the trial court for the following reasons: (1) the enabling statutes on subdivisions did not give the defendant the authority to include historical factors in its regulations; (2) the terms "town plan of development," "historic factors" and "historic streetscape" are not known and fixed standards required for subdivision regulations; (3) the Greenwich town charter forbids the board from denying a subdivision application based on the plan of development; and (4) it is the duty of the historic district commission, not the planning and zoning commission or the board of appeals, to decide whether a building should be erected in a historic district.

" 'It has been said that the whole field of subdivision regulation is peculiarly a creature of legislation. It is therefore imperative that before subdivision regulations may be made operative, the necessary statutory authorization for such regulation must exist. . . . In other words, in order to determine whether the regulation in question was within the authority of the commission to enact, we do not search for a statutory prohibition

against such an enactment; rather, we must search for statutory authority for the enactment.' . . . " (Citations omitted.) *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 545, 244 A.2d 319 (1968).

Substantive subdivision requirements are set forth in General Statutes § 8-25 and procedural subdivision requirements are set forth in General Statutes § 8-26.[2] The subdivision regulations are required to conform to local zoning regulations. Subdivision regulations cannot impose minimum lot size, shape, width and depth requirements greater than those required under the zoning regulations for the zone where the property is to be subdivided or deny approval of lots that meet all zoning requirements. *Christofaro* v. *Burlington,* 217 Conn. 103, 107, 584 A.2d 1168 (1991). Also, subdivision regulations can have provisions to meet the general test in § 8-25 that the land to be subdivided shall be of such character "that it can be used for building purposes without danger to health or the public safety."[3] Further, the definition of subdivision in the regulations must conform with the definitions of subdivision and resubdivision set forth in General Statutes

---

[2] General Statutes § 8-25 provides in part: "Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety that proper provision shall be made for water, drainage and sewerage and . . . that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. . . ." Section 8-25 also permits regulation of street grades and the extent of improvement of subdivision roads, open spaces, parks and playgrounds, soil erosion and sediment controls, the provision of public utilities and services, and energy efficient patterns of development and use.

[3] These regulations can include requirements for an application form with required information on it, a proposed subdivision map, a topographic map, a soil suitability report for septic systems on the proposed lots, engineer drawings for proposed roads and/or drainage facilities, and a map showing inland wetland area boundaries.

§ 8-18. *Peninsula Corporation* v. *Planning & Zoning Commission,* 151 Conn. 450, 451, 199 A.2d 1 (1964).

The enabling statutes do not allow a planning or planning and zoning commission to promulgate subdivision regulations based on historic and architectural concerns, historic streetscape or the integrity and historic character of a historic district. The parties stipulated, and our review of the regulations confirms, that the application conformed to all of the regulations of an R-7 zone. At oral argument, the board's counsel conceded that if the subject property was not located in an historic district, but in another R-7 zone, the application would have been approved because it met all of the regulations not concerned with "historic." The reliance by the board in a subdivision application on matters "historic" is outside the enabling statute and is void.

"When a municipal planning commission considers the approval or disapproval of a subdivision plan, it is acting in an administrative capacity rather than in a legislative capacity. *Reed* v. *Planning & Zoning Commission,* 208 Conn. 431, 433, 544 A.2d 1213 (1988). 'The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance.' Id.

" ' "The designation of a particular use of property as a permitted use establishes a *conclusive presumption* that such use does not adversely affect the district and *precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." ' (Emphasis added.) *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 532–33, 577 A.2d 288 (1990)." *Sowin Associates* v. *Planning & Zoning Commission,* 23 Conn. App. 370, 374, 580 A.2d 91 (1990).

"Subdivision regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similar cases. *Sonn* v. *Planning Commission,* 172 Conn. 156, 159–60, 374 A.2d 159 (1976). A commission's regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations. *American Power & Light Co.* v. *Securities & Exchange Commission,* 329 U.S. 90, 105, 67 S. Ct. 133, 91 L. Ed. 103 (1946); see *Sonn* v. *Planning Commission,* supra, 159.

"General policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit. *TLC Development, Inc.* v. *Planning & Zoning Commission,* supra, 530 n.2. Furthermore, the conclusive presumption set forth in *TLC Development, Inc.,* precludes a commission's reliance on a proposed subdivision's failure to coincide with the general harmony of the district. Id., 533." *Sowin Associates* v. *Planning & Zoning Commission,* supra, 376.

In the present case, the reasons given by the board for the denial of the subdivision application, even if "historic," was part of the enabling act, were not based on fixed and known standards that could apply to all similar subdivisions. At best they were general policy statements.

The board made the following findings that demonstrate this point. First, "[t]he proposed subdivision did not meet the purposes of the subdivision regulations as provided in Sec. 6-260 thereof."[4] This is a general

---

[4] "[Greenwich Municipal Code Subdivision Regulations] Sec. 6-260. Purposes of Article.

(a) The purposes of this Article shall be to:

policy statement. Section 6-260 of the Greenwich municipal code subdivision regulations sets forth general purpose statements, no standards and does not mention the words "historic" and "historic streetscape." They are not mentioned in this section or any other section of the subdivision regulations.[5]

Second, "[the proposed subdivision] does not conform to the Town of Greenwich Plan of Development in that it does not meet the basic objections of preservation of historic and architectural resources." This is a general purpose statement without any fixed and known standards. In addition, § 98 of the Greenwich town charter specifically provides that the commission shall not refuse approval of any subdivision on the ground that such subdivision creates or will tend to create a use of land contrary to that shown on the plan of development.[6]

---

(1) Further the orderly development of the Town in accordance with the Town Plan of Development.

(2) Insure that any land subdivided can be used for building purposes without danger to health or public safety. (3/9/81)

(3) Regulate the layout of streets in accordance with sound engineering principle to further the orderly development of the existing and projected street systems of the Town.

(4) Control the layout of lots to protect the environment.

(5) Regulate the layout, design and construction of drains along natural drainage routes and watercourses to further the orderly and efficient development of the drainage system of the Town.

(6) Provide for protective control measures in areas subject to flooding.

(7) Secure the preservation of natural features of the landscape and the setting aside of open space for the recreational needs of future residents.

(8) Control the placement of utilities."

[5] See footnote 8, infra.

[6] "[Greenwich Town Charter] Sec. 98. Plan; limitation on effect.

"(a) The Plan of Development shall not, except as specifically provided in this Article, prevent the use of any land for any purpose otherwise lawful, and shall not in any way reduce the amount of the award which any landowner may be entitled to receive for his land in any condemnation proceedings, whether or not the landowner or his predecessors in title shall have improved or altered his land contrary to the Plan of Development.

"(b) The Commission shall not refuse approval of any subdivision on the ground that such subdivision creates or will tend to create a use of land

Third, "[the proposed subdivision] does not preserve the natural features of the landscape; namely, the Historic streetscape." There is neither a general nor a specific definition of "historic streetscape" in the regulations, let alone a known or fixed standard.

Finally, the board found that "the integrity of the Historic District would be violated and the appearance and historic character of the Historic District would be impaired by this plan." There is nothing in the subdivision regulations that has anything to do with the historic district. The land in question is located in an R-7 zone, and the plaintiffs' subdivision application in every way conforms to the zoning and subdivision requirements of the R-7 zone.

Our disagreement with both the board and the trial court is the confusion of the planning and zoning commission's duties and functions as to subdivision regulations and applications with the historic district commission's duties as an administrative board to hear and decide applications for certificates of appropriateness as set forth in General Statutes § 7-147d.[7] As

contrary to that shown upon the Plan of Development, except insofar as the Commission may, under Section 101, require the streets and drains in such subdivision to conform to the street and drainage system shown on the Plan of Development."

[7] "[General Statutes] Sec. 7-147d. CERTIFICATE OF APPROPRIATENESS: PARKING AREAS. (a) No building or structure shall be erected or altered within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission.

"(b) No building permit for erection of a building or structure or for alteration of an exterior architectural feature within an historic district and no demolition permit for demolition or removal of a building or structure within an historic district shall be issued by a municipality or any department, agency or official thereof until a certificate of appropriateness has been issued. A certificate of appropriateness shall be required whether or not a building permit is required.

"(c) The historic district commission may request such plans, elevations, specifications, material and other information, including in the case of demolition or removal, a statement of the proposed condition and appearance

Professor Tondro states, "[t]he historic district commission's regulatory tool is the certificate of appropriateness. No building can be erected or altered within the district until the commission has issued a certificate. The municipality may not issue a building or demolition permit for any structure until a certificate has first been granted by the commission. Even outdoor advertising signs and bill posters need a certificate. Nor may any area within the district be used for parking, other than residential, without a certificate from the commission (Section 7-147d)." T. Tondro, Connecticut Land Use Regulation (1983 Sup.) p. 80.

The plaintiffs met all the requirements of the subdivision regulation of the town of Greenwich.[8] Because the property is located in an historic district, the plaintiffs must obtain a certificate of appropriateness from the historic district commission before they may build

of property after such demolition or removal, as may be reasonably deemed necessary by the commission to enable it to make a determination on the application. The style, material, size and location of outdoor advertising signs and bill posters within an historic district shall also be under the control of such commission. The provisions of this section shall not be construed to extend to the color of paint used on the exterior of any building or structure.

"(d) No area within an historic district shall be used for industrial, commercial, business, home industry or occupational parking, whether or not such area is zoned for such use, until after an application for a certificate of appropriateness as to parking has been submitted to the commission and approved by said commission. The provisions of this section shall apply to the enlargement or alteration of any such parking area in existence on October 1, 1973."

[8] We note that the trial court incorrectly relied on § 6-266 (a) (19) of the Greenwich municipal code subdivision regulations. That section addresses environmental concerns in the context of the preliminary layout, and provides in relevant part:

"PRELIMINARY LAYOUT CONTENTS.

(a) . . . The preliminary layout shall include as many of the following items of information as is practicable.

* * *

(19) For a subdivision of ten (10) lots or more or the subdivision of ten (10) or more acres, an environmental assessment by qualified environmen-

in accordance with their subdivision plan. The plaintiffs are entitled to a fair hearing on their application before a neutral and unbiased historic district commission.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the appeal and ordering the granting of the subdivision application.

In this opinion the other judges concurred.

tal specialists shall be provided. The Commission may require said assessment for smaller subdivisions if deemed necessary. The assessment shall include an evaluation of the following: (3/9/81)

(a) Conformance with Open Space Plan of Development

(b) Significant wetlands

(c) Steep Slopes

(d) Stormwater Drainage

(e) Soils capabilities

(f) Vegetation including forested areas and the identification of trees over 10" in caliper when not in part of forested areas.

(g) Significant geological formations

(h) Historical and archaelogical factors

(i) Animal habitats

(j) Water availability and quality

(k) Aquifer protection in accordance with the Statutes of the State of Connecticut

(l) Other data which the Commission deems appropriate

The environmental assessment shall be subject to a review, after the receipt of recommendations of the Conservation Commission, by the Planning and Zoning Commission including the mitigation measures for minimizing environmental impact before the applicant proceeds to final plan."