[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Background
The plaintiffs, Patricia Watson, The McCoid Family Trust, and Winifred W. and David P. Chavin, have appealed from the granting of a resubdivision application by the defendant, Middletown Planning and Zoning Commission ("PZ"). The application had been filed by Thaddeus P. Bysiewicz ("applicant"). The plaintiffs are all adjoining property owners. Aggrievement is conceded. The plaintiffs claim that the PZ acted illegally, arbitrarily, and in abuse of its discretion. After reviewing the entire record and the supplements to it, I find that the PZ did not abuse its discretion and that the appeal must be dismissed.
On May 18, 2000 the applicant applied to the PZ for resubdivision approval for a 19 lot subdivision, to be known as Eastbury Hill, located on the easterly side of East Street in Middletown. The proposed site is adjacent to an approved subdivision, Russell Ridge, also owned by the applicant. Work at the Russell Ridge subdivision, including blasting, has been the subject of complaints by neighboring property owners.
Some of the blasting on this adjacent subdivision has taken place on a ridge which roughly separates the two properties.
A public hearing on the proposed resubdivision was held by the PZ on August 23, 2000. Also on the agenda for that evening were items related to the Russell Ridge subdivision which presented opportunity for public comment on the complaints about blasting and other disruptive constructive activities. At the commencement of the public hearing the chairmen of the PZ made the following statement:
 "Again, just for the Commissioner's point of view, we are only to consider what's before us now. Again, there are other matters that were on our agenda tonight again, specifically, I refer to the conclusion on those matters and those matters should not enter into any way, shape or form any of our thinking as in CT Page 12080 terms as to what is going to be presented by the applicant at this point and if anybody so chooses to pursue any discussion now on matters that had been discussed previously, they will not be entertained by the Chair. You may continue."
This statement was directed at those neighbors in the audience who wanted to talk about the blasting on the Russell Ridge subdivision.
On September 13, 2000 the PZ approved the resubdivision with several conditions including a restriction on blasting to that necessary for construction of storm drains and sanitary sewers on Eastbury Drive near the front part of the road. No other blasting is permitted. Also, the PZ voted to prohibit the use of a rock crusher and to limit blasting to the hours of 9:00 a.m. and noon after the giving of 48 hours written notice to abutters.
II. Discussion
 A. Applicable Law
The law surrounding the appeal of a planning commission's handling of a resubdivision application is well established. See, Pelliccione v.Planning Zoning Commission, 64 Conn. App. 320, 326-328 (2001) for a detailed summary of the case law.
B. Conduct of The Hearing
The first issue raised by the plaintiffs is that the public hearing conducted by the PZ was not fair because the chairman attempted to prevent the public from commenting on blasting and other construction activities at the Russell Ridge subdivision. The plaintiffs claim that this amounted to a denial of due process and a denial of the statutory obligation to hold a public hearing. These claims are rejected.
The public hearing conducted by the PZ was not unfair. Although the chairman attempted to restrain comment about blasting on the Russell Ridge subdivision, the plaintiffs were able to comment at length about their hope that blasting would be restricted in the Eastbury Hill subdivision. For example, Attorney Lunt on behalf of two of the plaintiffs was able to make an extensive speech setting forth his belief that there would need to be blasting on the ridge dividing the two subdivisions which would be detrimental and would require a rock crusher. He was even able to say that his opinion was based upon the fact that blasting had been required on the other side of the same ridge in the Russell Ridge subdivision. See transcript pp. 18-20. Attorney CT Page 12081 Petrella representing the plaintiff, Patricia Watson, was able to speak at length as well. He specifically asked that blasting be restricted. See, transcript pp. 27-28. The PZ responded to these concerns by limiting blasting to an area away from the ridge, by prohibiting a rock crusher, by requiring written notice to abutters and by limiting the hours to 9:00 a.m. to noon. A careful review of the transcript does not reveal any way in which the plaintiffs were prevented from making their points concerning blasting on the site. They were unable to restate their opposition to blasting on the Russell Ridge site but this was not harmful to their them. The PZ was well aware of their complaints regarding this other site through the other items on the agenda which offered them an opportunity to speak.
C. Solar Access
The plaintiffs argue that the PZ failed to consider Section 5.11 of the Subdivision Regulations. That section states:
5.11 PASSIVE SOLAR DESIGN
 Any person submitting a subdivision shall demonstrate to the Commission that they have designed the street and lot layouts, and used vegetation and natural and man made topographical features so as to maximize and protect solar access within the development while still observing other provisions of these regulations and respecting the natural limitations of the site.
A review of the transcript of the public hearing and the discussion of the PZ members prior to the vote fails to show any express discussion of Section 5.11. But that does not mean that the PZ failed to consider Section 5.11. It appears that good solar access at this site was assumed by everyone involved to be obvious. The plaintiffs never raised a concern about solar access at the public hearing. They have not pointed to any way in which the plan failed to maximize or protect solar access. Indeed, the majority of the site is an open field with unobstructed solar access. Although there is a canopy of trees along the perimeter of some of the site, the location of all of the houses will be in the open. There is no apparent reason why future home builders would be unable to orient their houses to take full advantage of the sun.
D. Topography
The plaintiffs also claim that the PZ failed to give sufficient consideration to Section 5.02.02 of the Subdivision Regulations. That section provides, in part: CT Page 12082
 Development of the site shall be based on the site analysis. Development lots should be determined by consideration of the following factors: protection of public health and safety, preservation of the natural features of the site, making the best use of the natural terrain, avoidance of environmentally sensitive areas, and minimizing negative impacts and alteration of natural, historical and/or archeological features.
As evidence that the PZ failed to consider the best use of the natural terrain the plaintiffs point to the fact that the resubdivision plan calls for a large quantity of earth and rock to be removed from one side of the site and used to fill the other side of the site. This is proposed as a way of making the slope of the lots more level and as a way of producing more usable lots. It is clear from the transcript that the plaintiffs were able to express their concerns about this issue at the public hearing. It is also clear that the PZ discussed and considered topography but was not in agreement with the plaintiff's arguments. It is tempting for this court to find that a plan which calls for such extensive alteration of the natural terrain is not in conformity with Section 5.02.02. But this overlooks the fact that it is not the job of the court to second guess the PZ on the application of the regulations regarding a technical issue like topography unless there is no evidence in the record which could have reasonably led the PZ to have decided as it did. Although the court tends to agree with the plaintiff's view of the evidence, it cannot be said that there is no evidence supporting the PZ's decision. The PZ had a detailed grading plan which they considered. There was testimony from the professional engineer who drew the plans. The PZ received advice from the Town's professional engineering staff. This professional testimony and advice was that the grading plan was in conformity with the Regulations. Although this court tends to disagree, it does not have the power to substitute its judgment for that of the PZ on this sort of technical issue. It is within the province of the commission to interpret and apply its regulations. GormanConstruction Co. v. Planning Zoning Commission, 35 Conn. App. 191
(1994). A reviewing court cannot substitute its judgment as to the weight of the evidence before the commission and on factual issues material to the reasons for the commission's decision because it is within the province of the commission to determine the credibility of witnesses.Whisper Wind Development Corp. v. Planning Zoning Commission,32 Conn. App. 515, 523 (1994), aff'd, 229 Conn. 176 (1994). "The question is not whether the trial court would have reached the same conclusion but whether the record before the [commission] supports the decision reached. Calandro v. Zoning Commission, 176 Conn. 439, 440 (1979)." CT Page 12083Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983).
E. The Role of the Planning Director
The plaintiffs argue that the PZ allowed the Town Planning Director to take an improperly extensive role in the deliberations of the commission. This argument is without merit. A planning and zoning commission is entitled to professional and technical assistance in carrying out its duties. Yurdin v. Town Plan Zoning Commission,145 Conn. 416, 420-421 (1958). The record fails to reveal any evidence that the Town Planning Director exceeded his role as a technical and professional adviser. See, McCann v. Town Plan Zoning Commission,161 Conn. 65, 77 (1971).
F. Traffic
The plaintiffs also raise an issue with what they contend is a "pathetically inadequate" traffic report from the Middletown Police Department Traffic Division. The safety of the proposed road design is a question of fact. Shailer v. Planning Zoning Commission,26 Conn. App. 17, 25 (1991). Although it may not be extensive, the court is unable to say that there was no evidence in the record upon which the PZ could have found that the subdivision plan complied with the street and traffic sections of the Regulation. Certainly the plaintiffs have not pointed to any way in which the plan is deficient.
G. Drainage
The most significant issue raised by the plaintiffs concerns drainage. The plaintiffs already have a drainage problem with water running from the proposed site. They have legitimate concern that the development of the site will make things worse. They raised these concerns at the public hearing through the testimony of a professional geologist, Charles Dimmock, who did a study of the runoff from the proposed site to that of Ms. McCoid. He concluded that while the resubdivision would generally decrease runoff to neighboring properties, it would significantly increase runoff to Ms. McCoid's land and to that of the plaintiff, Patricia Watson. After the hearing was closed the Town's Public Works Department through their engineer, Thomas Nigosanti, reviewed Mr. Dimmock's calculations and concluded in a memo to the PZ that the development would actually reduce the area which drains to the McCoid property by 0.09 acres. Also, he informed the PZ that the developer was willing to regrade lots 118 119 and to construct yard drains from these lots to the street drainage system. Mr. Nigosanti then opined that, as a result, the McCoid property should expect much less runoff after development than it currently experiences. When the PZ approved the CT Page 12084 application it conditioned the approval upon yard drains being installed on Lots 118 and 119.
The plaintiffs argue that they were denied their right of due process to review, rebut, and cross examine Mr. Nigosanti's calculations. Also, they claim that they were never able to address the change made to the original plan by the requirement of the two yard drains. These arguments are unavailing. The receipt of technical calculations from the Department of Public Works was perfectly permissible under the principle that commissions are entitled to have the assistance of their technical staff after the public hearing is closed. Furthermore, it is not clear the plaintiffs were prejudiced in any way by the Public Works calculations as they do not allege that their expert feels they are inaccurate. The failure to allege prejudice by the receipt of supplementary information prevents a finding that the commission acted arbitrarily, illegally or in abuse of its discretion. Dupont v. Planning Zoning Commission,156 Conn. 207, 213 (1968).
The question of whether the plaintiffs should have been able to comment upon the changes to the plan (the two yard drains) requires a consideration of the case of Carlson v. Fisher, 18 Conn. App. 488
(1989). That case stands for the proposition that it is improper for a commission to receive a detailed water drainage proposal from the applicant after the public hearing has been closed without giving the public an opportunity to comment. Id. In that case the applicant had not submitted any detailed drainage plans, a defect which had been pointed out by the town engineer prior to the public hearing. At the hearing the abutting property owner discussed the absence of detailed drainage plan and stated that he would need to review such a plan in order to be able to comment on it. After the hearing was closed, the applicant submitted a detailed drainage plan which was reviewed by the town engineer and approved by the commission without any public comment. The court found that the plaintiffs were denied their due process rights to cross-examination regarding this new evidence, i.e. the detailed drainage plan.
Although the situation in the Carlson case is similar to that here, it is distinguishable. Here, there is a detailed Soil Erosion and Sedimentation Control Plan which was available prior to the public hearing. It was available to the plaintiff's expert, Mr. Dimmock, who commended Mr. Johnson for his drainage plan which would, in general, it reduce runoff from the site. This is important because Section 5.23.01 of the Regulations merely requires that "The overall drainage system for residential subdivisions requiring new city streets and industrial subdivisions shall be designed such that the runoff rate outside of the subdivision during or after development does not exceed the rate that CT Page 12085 existed prior to the development." The evidence is clear that the drainage plan satisfied this requirement.
During the public hearing the applicant's engineer, Mr. Johnson, acknowledged that Mr. Dimmock was correct in his opinion that the plaintiffs would experience increased runoff as a result of the plan and that this situation could be corrected with the installation of yard drains on two of the lots which would collect water which would be piped to the street. Transcript, p. 33. In other words, Mr. Johnson admitted that he had made a mistake which he proposed to fix with yard drains. Mr. Dimmock was given the opportunity to comment. He agreed that yard drains would solve "a great deal of the problem." The small change in the plan made by the condition requiring two yard drains can not be compared to the receipt of a detailed drainage plan as in the Carlson case. The plaintiffs were not prejudiced in any way by this small change which was actually made during the course of the public hearing to address the valid concerns of the plaintiffs.
H. Additional Claims
The two additional arguments made by the plaintiffs have no validity. There is no evidence that the facilities provided for the public hearing were so inadequate that the hearing was rendered fundamentally unfair. As to the other claim, the plaintiffs have no standing to argue that the Town of Cornwall should have been given notice of the public hearing.Lauer v. Zoning Commission, 220 Conn. 455, 459-465 (1991).
III. Conclusion
The plaintiffs have failed to sustain their burden of proof that the PZ's approval of the application was arbitrary, illegal or an abuse of its discretion. The PZ's action was supported by substantial evidence in the record. Therefore, the appeal is dismissed.
BY THE COURT
JOHN W. PICKARD, JUDGE