**Robert T. RITZ, Plaintiff,**

v.

**TOWN OF EAST HARTFORD, East Hartford Board of Education, and George Drumm, in his individual capacity, Defendants.**

**No. 3:97CV01863 (GLG).**

United States District Court,
D. Connecticut.

Aug. 25, 2000.

Jacques J. Parenteau, William G. Madsen, Richard Eugene Hayber, Madsen & Prestley, Hartford, CT, for Plaintiff.

Michael Peter McKeon, Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Defendants.

### Memorandum Decision

GOETTEL, District Judge.

This action arises out of the elimination of plaintiff's position as business manager for the East Hartford Public Schools. The factual background of this case is described at length in this Court's earlier ruling on defendants' motion to dismiss and will be discussed herein only as necessary to this ruling. *See Ritz v. Town of East Hartford,* 1998 WL 154541 (Mar. 18, 1998). Following that ruling, plaintiff filed an amended complaint which added George Drumm, the former school superintendent, as a party defendant. All defendants have now moved for summary judgment on all seven counts of the amended complaint. [**Doc. # 29**]. In response to the motion for summary judgment, plaintiff has dropped all of his claims against the Town of East Hartford. He has also withdrawn his claims for negligent infliction of emotional distress (count five) and promissory estoppel (count seven). Thus, we consider only the remaining claims against the East Hartford Board of Education ("the Board") and George Drumm.

### BACKGROUND

On August 12, 1996, plaintiff commenced his employment as business manager with the East Hartford Public Schools. As such, he was responsible for administering the fiscal affairs of the district and reported directly to the school superintendent. At all times relevant to this action, defendant George Drumm was the superintendent and James Fallon was assistant superintendent.

Plaintiff claims that during the 1996–97 school year, he reported "suspected violations of law, unethical practices, mismanagement, and abuse of authority" to Superintendent Drumm. Defendants deny this claim. Thereafter, plaintiff claims that Drumm began a covert campaign to discredit him and to terminate his employment. During this same school year, defendants retained an outside consultant, Dr. Paul Smotas, to evaluate reorganization of the Business Office and Buildings and Grounds Department. The Board voted to accept the reorganization plan recommended by the consultant, which called for the elimination of one position, that being the business manager. Plaintiff maintains that the reorganization was contrived solely for the purpose of eliminating his position in retaliation for his whistle-blowing activities. Defendants, of course, deny this assertion. Additionally, as part of the reorganization, a new position of Director of Business and Operations was created. Although plaintiff applied for this position, he was not selected. (Ltr. from Gagnon to Ritz dated July 7, 1997). Plaintiff states that before he even applied for the position, Superintendent Drumm told him that it was a "done deal" and that he would not be hired. Again, plaintiff maintains that his non-selection was motivated by his whistle-blowing activities, which defendants deny.

### DISCUSSION

### I. Summary Judgment Standard

The general principles applicable to summary judgment motions are well-set-

tled. Under Rule 56(c), Fed.R.Civ.P., summary judgment shall be rendered forthwith "if the pleadings [and] depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The burden of showing that there is no genuine factual dispute rests upon the moving party. *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). In assessing the record to determine if such issues exist, we are required to resolve all ambiguities in favor of the party against whom summary judgment is sought and to draw all permissible inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This remedy, which precludes a trial, is properly granted only when no rational jury could find in favor of the non-moving party. *Carlton v. Mystic Transportation, Inc.*, 202 F.3d 129, 133 (2d Cir.), *cert. denied*, — U.S. —, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000).

## II. Absolute Legislative Immunity

■ As a preliminary matter, the East Hartford Board of Education contends that all counts against it should be dismissed based upon the doctrine of legislative immunity. This defense, however, is not available to a board of education. Absolute legislative immunity is a doctrine that protects individual legislators from liability for their legislative activities. *Bogan v. Scott–Harris*, 523 U.S. 44, 48–54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). That doctrine does not protect the governing bodies on which they serve. *Morris*, 196 F.3d at 111; *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 133 (5th Cir.1986). Therefore, the Board of Education cannot assert legislative immunity as an absolute defense to plaintiff's complaint.

## III. Failure to Comply with C.G.S.A. § 7–465

■ Defendants next assert that all state-law counts of plaintiff's complaint should be dismissed because plaintiff failed to comply with the pre-filing notice requirements of C.G.S.A. § 7–465(a), which provides in relevant part:

No action *for personal physical injuries* or damages to real or personal property *shall be maintained against such municipality and employee jointly* unless such action is commenced within two years after the cause of action therefor arose nor unless written notice of the intention to commence such action and of the time and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued.

(Emphasis added). Plaintiff argues that his action is not one for personal physical injuries against a municipal employee and municipality and therefore § 7–465 does not apply. *See Cheshire v. Ledge Light Health District*, No. 543535, 1998 WL 242512 (Conn.Super. May 5, 1998). In any event, he states that he did comply with the six-month notice provision by serving his complaint on the town clerk of East Hartford within two months of his termination. We agree with plaintiff that this case does not fall within the purview of § 7–465. The Town of East Hartford is no longer a defendant and, even if it were, it appears that the town clerk was served with notice of plaintiff's complaint well within the six-month period. (*See* Letter of Sept. 2, 1997 from the Town Clerk to Attorney Madsen acknowledging receipt of plaintiff's claim). Therefore, we decline to grant summary judgment in favor of defendants on plaintiff's state-law claims on this basis.

## IV. Count I—Violation of Whistleblower's Protection Act

Plaintiff's first count is against the Board of Education for violating Connecti-

cut's Whistleblower's Protection Act, C.G.S.A. § 31–51m, when it terminated plaintiff and failed to select him for the new position created by the reorganization. Plaintiff alleges that these actions were taken in retaliation for his reporting suspected violations of law, unethical practices, mismanagement, and abuse of authority to the superintendent and assistant superintendent of the school system.

### A. Lack of Notice to the Board

■ Defendant Board of Education asserts that, although plaintiff alleges that he reported suspected violations of law, unethical practices, mismanagement, and abuse of authority to the superintendent and the assistant superintendent, plaintiff does not allege that he ever reported these violations to the Board and, therefore, the Board cannot be liable under § 31–51m. Plaintiff responds that his complaints to Superintendent Drumm, as the chief executive officer of the Board, constituted notice to the Board.

This issue was addressed in this Court's earlier ruling on the motion to dismiss, in which we held that § 31–51m covers internal whistle-blowing.

> Given the degree of the superintendent's statutory responsibilities and authority, we find that a report to the superintendent constitutes a report to a public body, even where the report concerned activities of the superintendent to whom the report was made.

*Ritz*, 1998 WL 154541, at *5. Under C.G.S.A. § 10–157(a), the superintendent is designated as the "chief executive officer" of the Board of Education. He has "executive authority over the school system and the responsibility for its supervision." *Id.* As such, he is an agent of the Board and his actions constitute the actions of the Board of Education, unless the superintendent acts outside the scope of his authority. *Meehan v. East Lyme Bd. of Educ.*, No. 525063, 1994 WL 86330, *2 (Conn.Super. Mar.9, 1994), *aff'd*, 37 Conn. App. 922, 655 A.2d 1177 (1995). Based upon the statutory authority conferred upon the superintendent and in light of our prior decision in this case, we hold that, for purposes of § 31–51m, plaintiff's notice to the superintendent constituted notice to the Board.

### B. No Causal Connection

Defendants also argue that, even assuming these matters were reported, there is no evidence in the record of a "causal link" between the reorganization of plaintiff's position and his whistle-blowing activities.

■ In an action under § 31–51m(b), plaintiff has the initial burden under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), of proving by a preponderance of the evidence a prima facie case of retaliatory discharge. *See LaFond v. General Physics Services Corp.*, 50 F.3d 165, 172 (2d Cir.1995) (holding that Connecticut courts would apply federal employment discrimination standards to a claim of retaliatory discharge under § 31–51m). This consists of three elements: (1) that he engaged in a protected activity as defined by § 31–51m(b); (2) that he was subsequently discharged from his employment; and (3) that there was a causal connection between his participation in the protected activity and his discharge. *Id.* at 173. Plaintiff's burden at this stage is *de minimis*. As the Court held in *LaFond*,

> [s]ince the trial court is not to resolve issues of fact in deciding a motion for summary judgment, the determination of whether the circumstances give rise to an inference of retaliatory discharge must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to inter a [retaliatory] motive. It is *not* the province of the summary judgment court itself to decide what inferences should be drawn.

50 F.3d at 173 (internal citations and quotation marks omitted)(emphasis in original).

In this case, plaintiff testified that after he reported numerous improprieties to Superintendent Drumm, Drumm hired a consultant to look into reorganizing plaintiff's department. Thus, there was a temporal proximity between plaintiff's alleged whistle-blowing and the reorganization that, perhaps not just coincidentally, eliminated only plaintiff's position. Dr. Smotas, the hired consultant, testified that Drumm had mentioned to him at the outset of the project that plaintiff had a one-year contract that would be coming up for renewal and, therefore, this might be an opportunity to look into reorganizing plaintiff's department. (Smotas' Dep. at 39). Drumm did not mention this with respect to any other position. *Id.* William Gagnon, Human Resources Director, testified that he had concerns about plaintiff from the very beginning of his employment and, as early as the fall of 1996, encouraged Drumm to begin progressive discipline towards plaintiff, but that was not Drumm's "style of operation." (Gagnon Dep. at 89). He further testified that, from the beginning of plaintiff's employment, he had numerous conversations with Drumm about plaintiff, including discussions about reorganization. (Gagnon Dep. at 80). Hildegard Mayranen, Chairperson of the Board, testified that Drumm told her that people in the Central Office (where plaintiff worked) were unhappy and that it was a difficult

situation. (Mayranen Dep. at 41). More specifically, she recalled, that there were difficulties with plaintiff and that support staff could not work with him. *Id.* at 42. She was also aware that Drumm wanted to reorganize the Central Office and that there were discussions among Board members about this. *Id.* at 43. Ninety-five percent of the information she received about Ritz came from Drumm. Although she was unsure whether the concerns about plaintiff emerged before or after consultant Smotas was retained, she did testify that her concerns about plaintiff started after the first or second month of his employment. *Id.* at 45–46. Subsequently, in early January, 1997, the Board directed Drumm to

> review both the division of Business Services [plaintiff's area] and Buildings and Grounds with an outside service and to return to the Board with specific recommendations for improvements.... The Board strongly cited Business Services as an area that requires a major plan for reorganization.

*Id.* at 56–57 (quoting from Drumm's written performance evaluation by the Board). Thus, it could reasonably be inferred that, at the point Drumm was directed to hire a consultant and to look into a reorganization of plaintiff's department, the Board was aware of problems with plaintiff, although it is unclear whether those problems were his alleged whistle-blowing, his performance, his management style, or otherwise.[1] Based upon this evidence,

---

1. The Court emphasizes that, at this summary judgment stage, there has been no finding that plaintiff's whistle-blowing activities were in fact the driving force behind the reorganization and plaintiff's termination. The reorganization may indeed have been devised as a means to get rid of plaintiff, but not necessarily for his whistle-blowing. It may have been the manner in which he performed his job and/or interacted with others. For example, Gagnon testified:

 > I was terribly bothered by the fact that every time you met with Bob [Ritz], he was either writing down every word you said or he was putting a tape recorder on the table, and you simply—I simply felt that you can't

work with a man who is working and writing everything down and tape-recording everything. I got to the point where I believed there was a real possibility that he was putting tape-recorders in his pocket and secretly retaping the meetings of conversations with me.

(Gagnon Dep. at 39). It also may be that plaintiff was never the target of the reorganization. However, that question is for the jury—not this Court—to resolve. At this juncture, the Court has only found sufficient evidence to create a genuine issue of fact for the jury. "To be sure, it is not within the province of the trial court at the summary judgment stage to resolve ambiguities and draw

there is at least a genuine issue of material fact as to whether there was a causal connection between plaintiff's whistle-blowing ·activities, the reorganization, and the ultimate elimination of his position. However, for purposes of this summary judgment motion, we find that plaintiff has met his prima facie burden.

■ Under *McDonnell Douglas,* once a plaintiff demonstrates a prima facie case, the defendant is obligated to produce evidence which, if taken as true, would permit the conclusion that there was a non-retaliatory reason for plaintiff's termination. *LaFond,* 50 F.3d at 174. Defendants have produced sufficient evidence of a non-retaliatory motive—*i.e.,* that plaintiff's position was eliminated as part of a reorganization recommended by an independent consultant.

■ Since defendants have articulated a legitimate, non-retaliatory reason for plaintiff's discharge, plaintiff's burden at trial would be to prove by a preponderance of the evidence that this articulated reason was a pretext for retaliatory discharge. *Id.* In ruling on a motion for summary judgment, we are required to draw all permissible inferences in plaintiff's favor and determine whether, based on the evidence before us, a reasonable jury could conclude that the reorganization was a pretext for terminating plaintiff because of his whistle-blowing activities. Based on the evidence discussed above, we conclude that plaintiff has presented sufficient evidence to raise a genuine issue of material fact in this regard. As the Second Circuit has held, cases involving a party's motivation for taking certain actions are ill-suited for disposition on summary judgment. *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81 (2d Cir.1996).

Therefore, finding genuine issues of material fact in this regard, the Court denies summary judgment as to Count I of plaintiff's complaint.

inferences in favor of the movant." *LaFond,*

## V. Counts II & III— § 1983—Liability of Board

Plaintiff's second and third counts are brought under 42 U.S.C. § 1983 against both the Board and Drumm for violation of his constitutional rights to procedural due process and free speech. The Board asserts that these counts must be dismissed because they are premised solely on a theory of respondeat superior, which is an impermissible basis for imposing liability on a municipal body under § 1983.

■ As the Board correctly states, "[i]t is now virtually hornbook law that '[r]espondeat superior may not serve as a basis for imposing liability under § 1983.' *Armao v. American Honda Motor Co.,* 917 F.Supp. 142, 144 (D.Conn.1996)." (Def.'s Mem. at 13). That, however, begs the underlying question of whether plaintiff's § 1983 claims are, in fact, based on a theory of respondeat superior or instead are based on a permissible theory under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In Count Two, plaintiff's procedural due process claim against the Board relates to the elimination of his position as part of the reorganization, which was specifically approved by the Board. These claims against the Board are not based upon a theory of respondeat superior but are, instead, premised on the actions of the Board itself. Indeed, the Board in its Memorandum in Support of the Motion for Summary Judgment conceded that it had complete control over the terms of the plaintiff's employment as Business Manager in the East Hartford public schools (Def.'s Mem. at 8) and that it "exclusively exercised the right of hiring the plaintiff and also voting to eliminate his position." (Def.'s Mem. at 36). Plaintiff's claims against the Board with respect to these activities are not based on respondeat superior.

50 F.3d at 174.

■ Plaintiff's free speech claims in Count Three address both the elimination of his position by virtue of the reorganization and Drumm's refusal to appoint him to the newly created position. He has asserted claims against the Board with respect to both of these actions. We have already discussed plaintiff's claims against the Board relating to the reorganization. With respect to his non-appointment to the new position, plaintiff testified that he was informed by Drumm that he would not be considered. A letter from Human Resources Director Gagnon to plaintiff dated July 7, 1997, stated that this decision was made by the Selection Committee. There is no direct evidence of the Board's involvement in this decision, although the new position was created as part of the reorganization, which the Board expressly approved.

Whether the Board can be held liable under § 1983 for the decision not to rehire plaintiff is an issue that we are unable to resolve at this time. This claim is factually intertwined with plaintiff's claim relating to the Board's elimination of his position. At a minimum, there are genuine issues of material fact regarding who made the decision not to consider or hire plaintiff for the new position and whether the Board had any involvement with this deci-sion. Furthermore, it is possible that the Board may have liability if the decision not to hire plaintiff was made by a final policy-maker, as plaintiff has asserted.[2] However, that decision cannot be made based upon the facts of record now before the Court. Therefore, the Court denies summary judgment on this basis.

## VI. Count II—Deprivation of Procedural Due Process— § 1983

■ We now turn to the substance of plaintiff's claim against the Board of Education and Superintendent Drumm for denying him procedural due process with respect to his termination. Plaintiff alleges that he was never provided with notice of the real reasons for his termination nor an opportunity to respond, nor a hearing before an impartial body. He testified in his affidavit that, despite his request to Drumm for a pre-termination meeting with the Board, he was never afforded this opportunity. (Ritz Aff. at ¶ 40). Defendants argue that plaintiff did not have a property interest in continued employment and thus had no right to due process on the elimination of his position.

Plaintiff's due process claim depends on the existence of a property right in continued public employment. *See Board of Re-*

---

2. In his brief, plaintiff asserts that because Drumm was the CEO of the Board, his actions constitute actions of the Board, citing *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41 (2d Cir.1983). In *Rookard,* the Second Circuit held that "[a] single unlawful discharge, if ordered by a person 'whose edicts or acts may fairly be said to represent official policy,' *Monell,* 436 U.S. at 694, 98 S.Ct. 2018, may support an action against the municipal corporation." 710 F.2d at 45. The Court noted the difficulty in identifying those individuals whose actions establish policy. "Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." *Id.* (citations omitted). "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Id.* (citations omitted). The Court instructed that, in determining policy-making authority, a court must consider not only the official's title, but also his or her scope of employment and role within the organization. *Id.* Applying those factors in the *Rookard* case, the Court found that plaintiff had sufficiently established that the executive director of the hospital had authority to order the plaintiff's transfer and that the vice president of corporate affairs had the authority to order her discharge. There was also evidence that their authority over personnel decisions was final. This, the Court held, was sufficient to establish their policy-making authority. Therefore, the Court held that if these individuals fired the plaintiff because of her whistle-blowing activities, they established the policy of the municipal hospital corporation. *Id.* at 46. Defendant has not rebutted plaintiff's argument that Drumm was a final policymaker. We do not have sufficient facts before us to determine who had final decision-making authority for hiring the Director of Business and Operations.

*gents of State Colleges v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff has the burden of proving a legitimate, enforceable claim of entitlement to his continued employment.

Plaintiff contends that, when hired, he understood that his position as business manager was a permanent position and that he could only be terminated for just cause. Defendants disagree and cite to the language of plaintiff's annual salary agreement, which states that the Board agreed to pay plaintiff an *annual* salary of $55,000 for the fiscal year, July 1, 1996, through June 30, 1997, "under the terms of this Salary Agreement and Regulation/Personnel 4240 of the East Hartford Board of Education." The fact that plaintiff's salary could be adjusted annually is not dispositive of the issue of whether plaintiff was entitled to due process.

Mr. Gagnon, the Human Resources Director, described plaintiff's position as a permanent, full-time position. (Gagnon Dep. at 85). Gagnon testified that plaintiff was a non-certified employee, subject to the personnel policies of the East Hartford School System, which provided that dismissal could only be for cause. *Id.* at 48, 84; (Regulation 4217.4, rev. 12/1/93). "Just cause" was then defined in section 4217.41(a) (rev.4/19/82). The regulations further provided that a notice of disciplinary action must contain a statement of the specific charges on which the disciplinary action is based. A general charge would not suffice. (Regulation 4217.4). Additionally, according to the personnel policies, employees such as plaintiff should have been subjected to progressive discipline if there were performance problems, a "progressive discipline policy," (Gagnon Dep. at 52), but, according to Gagnon, there was no requirement of progressive discipline in the case of a reorganization or layoff. *Id.* at 55.

In May, 1997, the personnel policies were significantly changed to add an at-will provision, but this was not applied retroactively. *Id.* at 55–58. This new at-will policy, therefore, did not apply to plaintiff, who was subject to the personnel policies providing that he could only be terminated for good cause.

Thus, plaintiff had a protectible property interest in continued employment and, before he could be terminated, he was entitled to procedural due process. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Because we find genuine issues of material fact as to whether plaintiff's position was eliminated as part of a legitimate reorganization or whether the reorganization was, as plaintiff contends, a subterfuge for his termination, we do not reach the ultimate issue of whether there was a procedural due process violation. *See Cifarelli v. Village of Babylon,* 93 F.3d 47, 52–53 (2d Cir.1996).

### VII. Count III—Retaliation Based on Free Speech— § 1983

Count Three of plaintiff's complaint alleges retaliation by the Board and Superintendent Drumm against plaintiff for speaking out on matters of public concern in violation of his First Amendment rights. Defendants again argue that, because plaintiff never reported the purported unethical practices to the Board, his speech on these subjects could not have been a substantial motivating factor in the Board's decision to terminate his position and not to hire him.

■ It is well-settled that a public employee asserting a First Amendment retaliation under section 1983 must initially demonstrate by a preponderance of the evidence that (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination, such that it can be said that his speech was a motivating factor in the determination. *Morris,* 196 F.3d at 110; *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1057 (2d Cir.), *cert. denied,*

510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993). In this case, the first two elements are not at issue. Rather, defendants' argument focuses on the third element. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

 As we held above with respect to plaintiff's claim under the State Whistle-blower's Protection Statute, Drumm was the CEO of the Board and its agent. Thus, his knowledge is imputed to the Board. *See Rookard, supra* (holding that the executive director and vice president of a municipal hospital corporation were sufficiently high officials to be considered policy-makers, such that their actions bound the municipal corporation). There is at least a genuine issue of material fact as to the causal connection between plaintiff's speech and the elimination of his position and his not being hired for the new position. Therefore, summary judgment cannot be granted on this Count.

### VIII. Count IV—Retaliation Based on Free Speech—C.G.S.A. § 31–51q

Defendants concede that this Count is controlled by our decision with respect to Count III, which was brought under section 1983, citing *Gottlob v. Connecticut State University,* No. CV930521148S, 1996 WL 57087 (Conn.Super. Jan.19, 1996). Thus, defendants' motion for summary judgment as to Count IV is likewise denied.

### IX. Count VI—Breach of Implied Contract

Count Six of plaintiff's complaint is for breach of implied contract based upon the representations made to him during the interview process and the personnel policies discussed above providing that non-classified employees, such as plaintiff, could only be terminated for cause. Defendants ignore these personnel policies entirely and argue instead that plaintiff is attempting to rely on phrases plucked out of context and that there was never a meeting of the minds between plaintiff and the Board.

 Under Connecticut law, an employer's written policies may give rise to an express or implied contract. *Coelho v. Posi–Seal Intern., Inc.,* 208 Conn. 106, 544 A.2d 170 (1988); *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 198, 520 A.2d 208 (1987), *overruled on other grounds in Curry v. Burns,* 225 Conn. 782, 626 A.2d 719 (1993). In this case, defendant's Human Resources Director testified that these policies applied to plaintiff, thus creating an implied contract between plaintiff and his employer, the Board. Again, however, there are genuine issues of material fact as to whether this implied contract was breached. That is an issue that will have to be resolved by at trial.

### CONCLUSION

Therefore, for the reasons set forth above, Defendants' Motion for Summary Judgment **[Doc. # 29]** is DENIED. Based upon plaintiff's dismissal of defendant Town of East Hartford, all claims against the Town are dismissed. Additionally, Counts V and VII are dismissed.

This case has been pending for three years. All dispositive motions have been ruled upon and the case should be ready for trial. This case is placed on the October Trial Calendar. Jury selection will take place on Monday, September 18, 2000, at 9:30 a.m. in Waterbury, Connecticut. A ready trial notice will issue forthwith.

SO ORDERED.