******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOHN K. HORVATH *v.* CITY OF HARTFORD
(AC 39132)

Alvord, Prescott and Bishop, Js.

*Syllabus*

The plaintiff, who had been employed by the defendant city of Hartford as
an assistant chief of police, sought to recover damages from the defen-
dant for its alleged violation of the state whistle-blower statute (§ 31-
51m) in connection with his reporting of actual or suspected violations
of law by the commander of the police department's internal affairs
division. The plaintiff alleged that as a result of his whistle-blowing
actions, the defendant constructively discharged him from his employ-
ment by reducing his responsibilities and taking other actions with
the intent to create an intolerable work atmosphere that caused his
involuntary resignation. After the city council cut certain funding for
the police department, the plaintiff took on additional duties as a result
of the retirement of another assistant chief of police, and the interim
chief of police informed the plaintiff that his position was going to be
eliminated from the budget but that his job was safe. The plaintiff, while
still employed by the defendant, then obtained employment elsewhere
and thereafter left his employment with the defendant. The trial court
granted the defendant's motion for summary judgment, concluding that
there existed no genuine issue of material fact in support of the plaintiff's
claim that he was constructively discharged. From the judgment ren-
dered thereon, the plaintiff appealed to this court, claiming that disputed
issues of material fact existed regarding whether the defendant's actions
amounted to a constructive discharge in violation of § 31-51m, and
whether the defendant had penalized him as a consequence of his whis-
tle-blowing activities. *Held*:

1. This court declined to consider the plaintiff's claim that the defendant's
   actions amounted to a retaliatory penalty and discipline for his having
   reported alleged abuses of authority, as the plaintiff's complaint did not
   claim relief on the basis of other forms of retaliation such as discipline
   or penalty, as described in § 31-51m, his claims were limited to those
   made in the complaint, and the claim was raised for the first time
   on appeal.

2. The trial court properly rendered summary judgment in favor of the
   defendant, the plaintiff having failed to establish the existence of a
   genuine issue of material fact as to whether he was constructively
   discharged as a result of his whistle-blowing actions: although it was
   undisputed that the plaintiff had raised a genuine issue of material fact
   that he had engaged in a protected activity as defined by § 31-51m (b),
   the changes in some of his work responsibilities were not so objectively
   intolerable that a reasonable person would have felt compelled to resign,
   the plaintiff provided no admissible evidence to demonstrate that he
   was demoted, reprimanded or threatened with the termination of his
   employment, his compensation never changed during that period, and
   the fact that he accepted a new position with higher pay before he
   resigned significantly undermined his claim of constructive discharge;
   moreover, the admissible evidence submitted by the parties in conjunc-
   tion with the motion for summary judgment suggested that any adverse
   action by the police department was driven by budgetary constraints,
   and, thus, the actions by the defendant were not sufficient to raise a
   genuine issue of material fact as to whether it intended to create an
   intolerable work environment, as the defendant's conduct in conveying
   to the plaintiff that his job might be at risk of elimination for budgetary
   reasons could not be equated to allegations of threats of discharge from
   employment so as to warrant a conclusion of constructive discharge.

Argued September 20—officially released December 12, 2017

*Procedural History*

Action to recover damages for, inter alia, violation
of the state whistle-blower statute, and for other relief,

brought to the Superior Court in the judicial district of Hartford, where the court, *Elgo, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Richard J. Padykula*, with whom, on the brief, was *Leon M. Rosenblatt*, for the appellant (plaintiff).

*John P. Shea, Jr.*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, John K. Horvath, appeals from the summary judgment rendered in favor of the defendant, the city of Hartford. On appeal, the plaintiff asserts that the trial court's judgment was in error because disputed issues of material fact exist concerning whether he was retaliated against, and later constructively discharged, by the defendant in violation of General Statutes § 31-51m as a result of his whistleblowing activities while in the defendant's employ. In response, the defendant claims that summary judgment was appropriate because, in opposition to its motion for summary judgment, the plaintiff offered no evidence that the defendant constructively discharged him by intentionally creating an intolerable work environment compelling him to resign. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. In 2011, the defendant employed the plaintiff as an assistant chief of police for the Hartford Police Department (department). At the time, the department's command structure was comprised of the chief of police, two deputy chiefs and three assistant chiefs. On April 11, 2011, in response to an internal complaint, the plaintiff requested an investigation into the actions of Neville Brooks, commander of the department's internal affairs division. In September, 2011, the city hired Marcum LLP to conduct an independent review of the operations of the internal affairs division. Following the release of the Marcum LLP report, the plaintiff sent a letter on December 1, 2011, to Daryl Roberts, the chief of police, setting forth his concerns regarding "numerous errors, omissions and intentional misrepresentations" contained in the Marcum LLP report.

On May 17, 2011, the Hartford city council passed a financial resolution reducing its budget by $1,750,000, including a reduction of $300,000 in department's executive command level expenses. This budget included funding for the plaintiff's position. The cuts were accomplished, in part, by the retirement of Lester McKoy, an assistant chief of police. On May 24, 2012, James Rovella, who became the interim chief of police after Roberts retired in December, 2011, informed the plaintiff that his position as assistant chief was going to be eliminated from the budget. In the same conversation, however, Rovella assured him that "his job was safe."[1]

In June, 2012, the plaintiff had a series of interviews with the University of Massachusetts in Amherst, Massachusetts, for the position of chief of police and subsequently accepted the position on September 4, 2012. The plaintiff left his employ with the department as assistant chief of police on September 21, 2012.

On May 14, 2013, the plaintiff filed a single count amended complaint alleging that the defendant had penalized him by constructively discharging him from his employment in violation of § 31-51m because "he investigated and reported, verbally and in writing, Brooks' actual or suspected violations of state law, municipal ordinance, and pertinent regulations."[2] Thereafter, the defendant filed a motion for summary judgment in which it claimed, inter alia, that there existed no genuine issue of material fact in support of the plaintiff's claim that he was constructively discharged. On April 13, 2016, the trial court issued a memorandum of decision granting the defendant's motion. This appeal followed. Additional facts will be provided as necessary.

I

We first set forth the applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *McClancy* v. *Bank of America, N.A.*, 176 Conn. App. 408, 412–13, 168 A.3d 658 (2017).

Additionally, "[o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . . Practice Book § 17-46 provides in relevant part that affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Citation omitted; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 655, 137 A.3d 1 (2016). "A conclusory assertion . . . does not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment." *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000). Last,

summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 751, 660 A.2d 810 (1995).

Section 31-51m protects an employee from retaliatory discharge when the employee has complained about a suspected violation of a state or federal law or regulation. *Arnone* v. *Enfield*, 79 Conn. App. 501, 506–507, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003). Section 31-51m (b) provides in relevant part: "No employer shall discharge, discipline or otherwise penalize any employee because (1) the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body . . . . No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false."

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, *intentionally* creates an intolerable work atmosphere that forces an employee to quit involuntarily. . . . Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 178, 717 A.2d 1254 (1998). "A claim of constructive discharge must be supported by more than the employee's subjective opinion that the job conditions have become so intolerable that he or she was forced to resign." *Seery* v. *Yale-New Haven Hospital*, 17 Conn. App. 532, 540, 554 A.2d 757 (1989). "Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for abusive discharge. . . . Through the use of constructive discharge, the law recognizes that an employee's voluntary resignation may be, in reality, a dismissal by the employer." (Citation omitted; internal quotation marks omitted.) Id. Moreover, "[i]n order to meet the high standard applicable to a claim of constructive discharge, a plaintiff is required to show both (1) that there is evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and (2) that the evidence shows that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign." (Internal quotation marks omitted.) *Irizarry* v. *Lily Transportation Corp.*, Docket No. 3:15-CV-1386 (DJS), 2017 WL 3037782, *4 (D. Conn. July 18, 2017), citing

*Adams* v. *Festival Fun Parks, LLC*, 560 Fed. Appx. 47, 49 (2d Cir. 2014).[3]

## II

On appeal, the plaintiff makes two claims: (1) that he was constructively discharged from his employment in violation § 31-51m, and (2) that he was otherwise penalized as a consequence of his whistle-blowing activities at the department in violation of the same statute. In regard to this second claim, the plaintiff asserts that "a reasonable jury could conclude that [the] defendant's actions amounted to a retaliatory penalty and discipline for the plaintiff['s] reporting of abuses of authority . . . ." In response, the defendant argues that the court correctly rendered summary judgment as to the plaintiff's retaliatory discharge claim, and that the plaintiff's second claim is outside the scope of the complaint and has been raised for the first time on appeal. In sum, the defendant claims that the plaintiff relied solely on retaliatory constructive discharge in his pleadings and, therefore, cannot now raise additional theories of recovery that are based on discipline or penalty untethered to his wrongful discharge claim. Because we agree that the plaintiff's second claim has been raised for the first time on appeal and is not framed as a distinct claim in the plaintiff's complaint, it does not warrant detailed analysis. Accordingly, we discuss it briefly before turning to the wrongful discharge claim.

The complaint alleges that the plaintiff "was constructively discharged on September 21, 2012." In three subsequent paragraphs, the complaint further repeats that the "defendant penalized the plaintiff by discharging him . . . ." Nowhere in the complaint does the plaintiff frame a claim for relief on the basis of other forms of retaliation, such as "disciplined or otherwise penalize[d]," as described in § 31-51m (b). In short, in his complaint, he claims that he was constructively discharged as a consequence of his whistle-blowing actions. A plaintiff's claims are, of course, framed by and limited to those made in the complaint. *Mamudovski* v. *BIC Corp.*, 78 Conn. App. 715, 732, 829 A.2d 47 (2003) ("[a] fundamental tenet in our law is that the plaintiff's complaint defines the dimensions of the issues to be litigated" [internal quotation marks omitted]), appeal dismissed, 271 Conn. 297, 857 A.2d 328 (2004). Additionally, we decline to consider his attempt to raise claims of alternative forms of retaliation for the first time on appeal. See, e.g., *Murphy* v. *EAPWJP, LLC*, 306 Conn. 391, 399, 50 A.3d 316 (2012) ("[i]t is well established that a claim must be distinctly raised at trial to be preserved for appeal"); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial").

## III

Turning to the constructive discharge claim, the

plaintiff asserts that there are genuine issues of material fact regarding whether the defendant's actions amounted to a constructive discharge in violation of § 31-51m. Specifically, the plaintiff claims that as a result of his whistle-blowing actions, the defendant reduced his responsibilities and took other actions with the intention to create an intolerable work atmosphere that caused his involuntary resignation.

In *Arnone* v. *Enfield*, supra, 79 Conn. App. 501, this court examined the framework for analyzing retaliatory discharge claims. "In an action under § 31-51m (b), [the] plaintiff has the initial burden under *McDonnell Douglas Corp.* [v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] of proving by a preponderance of the evidence a prima facie case of retaliatory discharge. . . . This consists of three elements: (1) that [the plaintiff] engaged in a protected activity as defined by § 31-51m (b); (2) that [the plaintiff] was subsequently discharged from his employment; and (3) that there was a causal connection between his participation in the protected activity and his discharge. . . . Once the plaintiff has made a prima facie showing of a retaliatory discharge, the defendant is obligated to produce evidence that, if taken as true, would permit the conclusion that there was a nonretaliatory reason for the termination of employment." (Citations omitted; internal quotation marks omitted.) *Arnone* v. *Enfield*, supra, 507; see also *Ritz* v. *East Hartford*, 110 F. Supp. 2d 94, 98 (D. Conn. 2000) (same). In order to satisfy the second element of § 31-51m by way of constructive discharge, the plaintiff needs to establish that the employer intentionally created an intolerable work atmosphere that forced the employee to quit involuntarily, and that the intolerable conditions are supported by more than the employee's subjective opinion. *Brittell* v. *Dept. of Correction*, supra, 247 Conn. 178.

It is undisputed that the plaintiff has raised a genuine issue of material fact regarding the first element of his prima facie case. As to the second element, we agree with the court that the plaintiff failed to raise, through admissible evidence in opposition to the defendant's motion for summary judgment, a genuine issue of material fact that he was constructively discharged. In support of this aspect of his claim, the plaintiff has presented evidence of what he alleges to be intolerable work conditions. He asserts that work responsibilities were taken from him, and that Rovella "began to manipulate [his] professional responsibilities, usurp [his] authority as assistant chief, and diminish [his] substantive duties." Specifically, this included: (1) taking away his duties in managing the police department's fleet vehicles; (2) removing him from the collective bargaining negotiating team; (3) denying his request to attend a Federal Bureau of Investigation training program; (4) approving a staffing, budget and overtime request without discussion with him, even though he

chaired the overtime committee; and (5) excluding him from certain meetings and initiatives, such as special events planning, a vendor outreach program, a police visibility project to improve community perception, representation in the public safety complex project, and a multiagency meeting to address violent crime in the city.

The defendant does not refute this evidence, but instead highlights that the plaintiff took on additional duties as a result of McKoy's resignation, such as the responsibilities of the assistant chief of operations in addition to his role as the assistant chief of detectives.[4] The defendant therefore argues that although some duties were taken from him, the addition of other duties simply rebalanced his responsibilities.

We agree, in principle, with the plaintiff's assertion that the accumulation of adverse conditions in the workplace can amount to intolerable conditions for purposes of assessing whether a constructive discharge has taken place. In *Grey* v. *Norwalk Board of Education*, 304 F. Supp. 2d 314, 319 (D. Conn. 2004), the plaintiff contended that she suffered a hostile work environment and was constructively discharged as the Norwalk public schools' director of curriculum and assessment. In *Grey*, the court stated: "[The plaintiff] presents a variety of circumstances that, combined, she argues made her situation 'intolerable,' including: the repeated threat that her position would be eliminated; a rumored letter announcing her termination; [the deputy superintendent's] public usurpation of her authority in front of her subordinates; the administration's manipulation of her curricular responsibilities; petty reprimands; and [the district superintendent's] suggestion that the District [buy back] her contract and his subsequent comment that she should consider herself 'finished.' Together, these circumstances support a reasonable inference of constructive discharge. On [the plaintiff's] version of the facts, the fact-finder could determine that it was reasonable for her to assume that she was 'compelled to leave.' " Id., 324.

Additionally, in *Chertkova* v. *Connecticut General Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit concluded that the plaintiff presented sufficient evidence to overcome a motion for summary judgment on her constructive discharge claim. The plaintiff's evidence suggested that "her supervisor engaged in a pattern of baseless criticisms, said she would not 'be around,' and that she would be fired instantly if she did not meet certain ambiguous behavior objectives." Id., 89. The plaintiff learned that her supervisor was soliciting other employees for negative information about her. Id., 85. A former employee stated in an affidavit that "creating intolerable conditions to force unwanted employees to quit was a recognized practice of [the] defendant's managers." Id.,

90. It was also discovered that the employer had prepared a letter of termination, which the plaintiff never received. Id., 86.

We do not agree, however, that the plaintiff's grievances, even if proven, parallel those found in decisional law to be sufficient to constitute an intolerable work environment. In sum, although we recognize that " '[t]he effect of adverse conditions is cumulative' "; *Grey* v. *Norwalk Board of Education*, supra, 304 F. Supp. 2d 324; the circumstances in which the plaintiff in the present matter was confronted with cannot be equated either in kind or in adversity with the work conditions found in *Grey* and *Chertkova* to constitute the basis for a finding of constructive discharge.

Indeed, viewed in the light most favorable to the nonmoving party, the admissible evidence submitted by the parties in conjunction with the motion for summary judgment suggests that any adverse action by the department against the plaintiff was driven not by a desire for retaliation but by looming budgetary constraints affecting the top tier of the department. Accordingly, regardless of whether the plaintiff thought that his position was to be eliminated and even if he was told of this probability in the context of budget discussions, the actions by the defendant are not sufficient to raise a genuine issue of material fact as to the high standard of demonstrating "the employer's *intent* to create an intolerable environment." (Emphasis added.) *Irizarry* v. *Lily Transportation Corp.*, supra, 2017 WL 3037782, *4. Moreover, given the evidence submitted by the defendant that, indeed, arrangements had been made to preserve the plaintiff's position even amidst budgetary cuts, we agree with the court's conclusion that, as a matter of law, no reasonable person "would have found the work conditions so intolerable that he would have felt compelled to resign." (Internal quotation marks omitted.) Id.[5] In sum, conveying to the plaintiff that his job may be at risk of elimination for budgetary reasons cannot be equated to allegations of threats of discharge from employment or termination letters such as those found in different circumstances so as to warrant a conclusion of constructive discharge.[6] Cf. *Chertkova* v. *Connecticut General Life Ins. Co.*, supra, 92 F.3d 85–86; *Grey* v. *Norwalk Board of Education*, supra, 304 F. Supp. 2d 319–20.

We conclude, therefore, that the changes in some of the plaintiff's work responsibilities were not so objectively intolerable that a reasonable person would have felt compelled to resign. The plaintiff has not provided admissible evidence demonstrating that he was demoted, reprimanded or personally threatened with the termination of his employment.[7] The plaintiff gained the additional responsibilities of another assistant chief.[8] The plaintiff's compensation never changed during this period. Furthermore, as the trial court noted,

"the fact that the plaintiff accepted a new position with a higher pay *before* he resigned significantly undermines a claim of constructive discharge." (Emphasis in original.)

Viewing the evidence in the light most favorable to the nonmoving party, the plaintiff has failed to establish the existence of a genuine issue of material fact as to whether he was constructively discharged as a result of his whistle-blowing actions. In order to successfully oppose summary judgment, the plaintiff must provide an evidentiary foundation to demonstrate the existence of a fact that will make a difference in the result of the case. There are no genuine issues of material fact that support his claim that the defendant intentionally created such an intolerable work environment that a reasonable person would feel forced to resign. Accordingly, the court properly rendered summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Rovella succeeded Roberts as chief of police after Roberts' retirement in 2011. We note that, in conjunction with its motion for summary judgment, the defendant submitted a transcript excerpt from Rovella's September 1, 2015 deposition, in which the following exchange occurred between Rovella and the plaintiff's counsel:

"Q. Why was [the plaintiff] led to believe his position was not open anymore and was unfunded?

"A. There's no reason for [the plaintiff] to believe that was an unfunded position. . . .

"Q. So, do you recall telling [the plaintiff] that his position was in the budget for 2012–2013?

"A. Yes."

In addition, the court had evidence, in the form of the plaintiff's deposition transcript and handwritten notes, submitted in conjunction with the motion for summary judgment, indicating that the plaintiff learned from Tom Bowley, the department's fiscal manager, that even though funding for his position was being eliminated from the budget, funds necessary to pay his salary were being "backfilled" from another department account. See footnote 5 of this opinion.

[2] The complaint further alleges that the defendant penalized the plaintiff by discharging him for investigating, identifying and reporting "Brooks' alleged unethical practices, mismanagement, and abuse of authority."

[3] We note that our courts have looked to federal employment discrimination standards, in the absence of authority to the contrary, in retaliatory discharge cases. See, e.g., *LaFond* v. *General Physics Services Corp.*, 50 F.3d 165, 172 (2d Cir. 1995); *Ritz* v. *East Hartford*, 110 F. Supp. 2d 94, 98 (D. Conn. 2000); *Beizer* v. *Dept. of Labor*, 56 Conn. App. 347, 355–56, 742 A.2d 821, cert. denied, 252 Conn. 937, 747 A.2d 1 (2000).

[4] The defendant submitted, among its exhibits in support of its motion for summary judgment, excerpts of the plaintiff's August 31, 2015 deposition. During that deposition, the following exchange occurred between the defendant's counsel and the plaintiff:

"Q. . . . [I]f you could provide me with an encapsulation of what your duties were before McKoy left, primary duties . . . and your primary duties after McKoy left?

"A. Sure. Prior to Assistant Chief McKoy leaving city service, I was the assistant chief in charge of the detective bureau, and after Chief McKoy's departure, I assumed the responsibilities for not only the detective bureau, but also all of the patrol division, uniformed services, and it was titled assistant chief of operations.

"Q. Okay. And so am I correct in understanding that you kept all or the majority of your duties as assistant chief of the detective bureau and they just added the additional duties of operations?

"A. Yes."

The plaintiff's resume reflected that these additional responsibilities began in July, 2011.

[5] We again note that in his deposition, the plaintiff recalled that the defendant had "backfilled" his salary with funding from another account:

"Q. Well, [Bowley] said [the plaintiff's job] was cut in theory, but that it was still reflected in the budget book as filled.

"A. Because it was being backfilled by moneys from another account or category, as I have written here . . . .

"Q. I don't see backfilled. Is that what you're suggesting, that it is coming out of the attrition category as backfilling?

"A. Yes. The $127,000 would have been my salary. So, if my salary equated to $127,000 and that exact amount is coming out of the attrition and this is the information that he's providing to me, one would only make that assumption that that's where the money was coming from." See also footnote 1 of this opinion.

Additionally, the defendant submitted a portion of the department's adopted payroll analysis budget for fiscal year 2012–2013, showing that the plaintiff's position was funded.

[6] Because the plaintiff repeatedly relies on specific statements contained in his affidavit and the affidavit of Valda G. Washington, the defendant's director of human resources, to support his claim that the defendant intended to discharge him in retaliation for his whistle-blowing actions, we briefly address them.

In his affidavit, the plaintiff states: "On February 15, 2012, Frank Rudewicz e-mailed me to set up a meeting. Rudewicz was the lead investigator for the Marcum LLP group. Rudewicz and I subsequently met, and Rudewicz told me that he had been called to a meeting with Mayor [Pedro] Segarra and members of his cabinet team, where he was given a copy of the memorandum I submitted to Chief Roberts on December 1, 2011. Rudewicz told me the [m]ayor was very angry and asked him, 'Why are these guys documenting everything? Why should I keep them around if they are going to do this?' . . . Rudewicz then asked me if I was looking for another job. It was clear from the context that he was telling me to look for another job because the mayor and staff were angry at me . . . ."

"Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . . Practice Book § 17-46 provides in relevant part that affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Citation omitted; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, supra, 163 Conn. App. 655. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. . . . Unless subject to an exception, hearsay is inadmissible." (Citation omitted; internal quotation marks omitted.) Id.

In the plaintiff's affidavit, he recalls a statement made to him by a third party, Rudewicz, who was also recalling a statement made to him by the mayor. The statement, " 'Why should I keep them around if they are going to do this?' " is an out-of-court statement offered to prove the truth of the matter asserted; that is, to prove that the defendant intended to terminate the plaintiff's employment for his whistle-blowing activities. The statement was not made by the declarant. See Conn. Code Evid. § 8-1. This statement is hearsay by definition in our Code of Evidence and is not admissible, nor does it fall within one of the exceptions to the rule against hearsay. Conn. Code Evid. §§ 8-2 and 8-3. Accordingly, we cannot consider this statement as admissible evidence in opposition to the motion for summary judgment.

The same logic applies to the out-of-court statements contained in Washington's affidavit, dated December 4, 2015. Furthermore, there is no evidence or allegation that the plaintiff was aware of the statements contained in Washington's affidavit until after December 4, 2015.

[7] Again, we note that although the plaintiff's complaint and affidavit state that he was informed by Rovella "that [his] *position* as [a]ssistant [c]hief of [p]olice was being eliminated from the budget"; (emphasis added); there is no admissible evidence supporting the allegation that the plaintiff himself (and not his position in the budget) was being eliminated. See footnote 1 of this opinion.

[8] The court noted that up until the time the plaintiff resigned, he retained such duties as: "leading Compstat meetings; leading the police budget committee; serving on the policy and procedure committee; serving on the firearms discharge board of inquiry; serving on the safety committee; serving on the health and wellness committee; serving as a CTIC policy board

member; and serving as a police representative to the homeless working group."

———————————————————